UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASMINE GRACE-LOUISE EDWARDS,

                                        Plaintiff,

                                                                5:18-CV-01155

v.
                                                                (GLS/TWD)

BEN WALSH, FRANK FOWLER, DAVE
DELVECCHHIO, HELEN HUDSON, ANGELA
MOHAR, BRENDAN GROOMS,

                                        Defendants.
_____

APPEARANCES:

JASMINE GRACE-LOUISE EDWARDS
Plaintiff *pro se*
335 Valley Drive
Syracuse, New York 13207

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for review under 28 U.S.C. § 1915(e)(2)((B) (i)-(iii) the

*pro se* complaint of Plaintiff Jasmine Grace-Louise Edwards against Defendants Ben Walsh

("Walsh" or "Mayor Walsh"), Frank L. Fowler ("Fowler" or "Police Chief Fowler"), Dave

DelVecchio ("DelVecchio"), Helen Hudson ("Hudson"), Angela Mohar ("Mohar"), and Brendan

Grooms ("Grooms").  (Dkt. No. 1.)  Also before the Court is Plaintiff's application for leave to

proceed *in forma pauperis* ("IFP application").  (Dkt. No. 2.)

## I.    IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IP application, the Court finds that she meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

Plaintiff's civil rights lawsuit appears to arise from an incident involving an alleged lack

of professionalism, negligence, and police misconduct by Defendants Syracuse police officers

Mohar and Grooms, and the officers' brutality or failure to intervene in brutality by a third party,

on March 29, 2013, at 720 Mountainview Avenue in Syracuse, New York.  (Dkt. No. 1.)

Plaintiff alleges that both Mohar and Grooms "neglected to inform the rights of terminations of

escort services to people involved in a court ordered of protection before escort services are

requested."[1]  *Id*. at 9-10.[2]  Plaintiff further alleges that Mohar "in actions are of department policy

misconduct; gives assent of violating plaintiff Jasmine Edwards rights of democracy," and that

her misconduct on March 29, 2013, was "while in authority on behalf of employer

professionalism is a duty and neglect is unacceptable."  *Id*. at 9.  Plaintiff alleges she is seeking

punishment "towards the misconduct for the brutality caused by the officers at the location."  *Id*.

Plaintiff further alleges that Grooms "needed to justify performance of discovery arraignments.

Actions are of holding command and authority; gives assent of violating plaintiff Jasmine

Edwards rights of free from discrimination, and that his misconduct on March 29, 2013, was the

same as that of Mohar."  *Id*. at 10.

Plaintiff alleges that on March 29, 2013, Syracuse Police Chief Fowler engaged in the

following misconduct: "intentional disregard of the requested escort services from the Syracuse

police department was purposely improper."  *Id*. at 6.  In addition, Plaintiff alleges that Fowler

"combined the leadership of UN monitored task force implementation actions are of having the

power to speak directly with mayor to achieve the direction improvements of the department;

---

[1]  All text quoted from Plaintiff's complaint is unaltered.

[2]  Page references to documents identified by docket number are to the numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.

gives assent of violating plaintiff Jasmine Edwards democracy rights." *Id*. at 5.

Plaintiff alleges that Walsh, who did not become Mayor of the City of Syracuse until January 2, 2018, "combined leadership of UN monitored task force implementation in actions are proposition for reporting and maintaining the management level of the city's council departments; gives assent of violating plaintiff Jasmine Edwards rights."[3] *Id*. at 4.  Plaintiff further claims in connection with the March 29, 2013, incident that "the alleged act of misconduct to verify of Ben Walsh is that leadership is defined for services of employees which lawfully governs the policy of employee standards towards peace in the city, which violations should not be disregarded."  (Dkt. No. 1 at 5.)

Plaintiff alleges that Defendant DelVecchio "administered task force that is discovered to be brutal actions are of a having the authority to proposition of untimely misconduct; gives assent of violating plaintiff Jasmine Edwards rights of liberty and freedom." *Id*. at 7.  Plaintiff describes DelVecchio's alleged misconduct related to the March 29, 2013, incident as "that law services are provided to ensure the safety of maintaining and the neglect of duties from ordinances to be administered to police officers have not been properly observed by plaintiff Jasmine Edwards." *Id*.

Plaintiff alleges that Defendant Hudson "needed to be humble towards the organizations pursuit of peace, actions are of having the ability to achieve the aim of duties; gives assent of violating plaintiff Jasmine Edwards rights of pursuit of happiness," and that "in actions are during the appropriate common gatherings to proposition; gives assent of violating plaintiff

---

[3]  The Court takes judicial notice that Defendant Ben Walsh did not take office as Mayor of Syracuse until 2018.  *See* https://www.wcny.org/january-12-2018-mayor-ben-walsh/ (last visited on October 24, 2018).

Jasmine Edwards rights of equality." *Id*. at 7-8.  Plaintiff describes Hudson's alleged act of misconduct in connection with the March 29, 2013, incident as that "there are duties of directions that have authority policy's to be permitted to employees and improper behavior of employees of the Syracuse police department are motivated by mismanaged conduct." *Id*. at 8.

According to a Syracuse Police Department Arrest Report attached to the complaint, Plaintiff was arrested on charges of criminal contempt, N.Y. Penal Law ("Penal Law") § 215.50, and resisting arrest, Penal Law § 205.30, on March 29, 2013, presumably in connection with the incident. *Id*. at 13.  The Syracuse City Court Certificate of Disposition, also attached to the complaint, reveals that Plaintiff plead guilty to Penal Law § 205.30, and was sentenced to one year imprisonment. *Id*. at 12.

It appears from the statement of relief sought in Plaintiff's complaint that the incident at 720 Mountainview Avenue on March 29, 2013, was related to Plaintiff attempting to retrieve her clothing from her mother's house and being deprived of the escort services and assistance she had sought from the Syracuse police to do so. *Id*. at 10-11.  Plaintiff is also seeking a review in this action of the facts and circumstances that resulted in her arrest. *Id.*

## IV.    ANALYSIS

Plaintiff has commenced this action as one for violation of her civil rights, presumably under 42 U.S.C. § 1983.  (Dkt. No. 1 at 1.)  The best the Court can glean from Plaintiff's inartfully drafted complaint is that she may be trying to assert claims for: (1) failure of the Defendants to provide her with the protection of a police escort when she went to retrieve her clothes from her mother's house on March 29, 2013; (2) excessive force by Defendants Mohar and Grooms, or failure to intervene to stop excessive force by other law enforcement officers in

6

connection with Plaintiff's arrest on March 29, 2013, in violation of Plaintiff's rights under the

Fourth Amendment; (3) possible false arrest in violation of the Fourth Amendment; and (4)

supervisory liability on the part of Fowler, Walsh, DelVecchio, and Hudson for the alleged use of

excessive force and false arrest of Plaintiff by Mohar and Grooms or other Syracuse police

officers in connection with the March 29, 2013, incident and Plaintiff's arrest.

A.    **State Law Claim Regarding Police Protection**

To the extent a claim is available for failure to provide police protection, it is a state law

cause of action. *See Diefenbacher v. Davenport*, No. 5:05-CV-1071 (GLS/GJD), 2007 WL

128876, at *4 (N.D.N.Y. Jan. 12, 2007).[4]  Under New York law, a municipality and its employee

"may not be held liable for injury to a claimant from a simple failure to provide police protection

even against future harm." *Id*.  (citation and internal quotation marks omitted).  There must be a

special relationship between the parties which arises when there are: "(1) an assumption by the

municipality through promises or actions, of an affirmative duty to act on behalf of the party who

was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to

harm; (3) some form of direct contact between the municipality's agents and the injured party;

and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Id*.

(citation and internal quotation marks omitted).  Plaintiff has failed to allege facts plausibly

showing the requisite special relationship that could support a claim for failure to provide

Plaintiff with a police escort.

---

[4] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

7

**B.    Fourth Amendment Excessive Force Claim**

A police officer's application of force during the course of an arrest is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108, *supplemented* 108 F. App'x 10 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Plaintiff has failed to plead any specific facts regarding the alleged police brutality during the March 29, 2013, incident, including the role, if any, played by Defendants.

**C.    Fourth Amendment False Arrest Claim**

The elements of a false arrest claim under the Fourth Amendment, which are essentially the same as a state law claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (citation and internal quotation marks omitted).  Plaintiff has not alleged any facts plausibly showing a § 1983 claim for false arrest, and while the arrest record shows that Plaintiff was arrested by Mohar, it provides no specific information regarding her involvement or what transpired with regard to Plaintiff's confinement, if any.

**D.    Supervisory Liability**

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977).  "Because vicarious liability is inapplicable to . . . § 1983 suits,

a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934).  Therefore, "a plaintiff must . .  allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d 865, 873 (2d Cir. 1995).[5]

Plaintiff has failed to allege facts plausibly showing personal involvement by Fowler, Walsh, DelVecchio, or Hudson with regard to the incident that occurred on March 29, 2013,

---

[5] The Second Circuit has thus far expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

allegedly resulting in Plaintiff's Fourth Amendment excessive force and false arrest claims under any of the *Colon* factors.

     E.      **Statute of Limitations**

     Given Plaintiff's *pro se* status, the Court would ordinarily be inclined to recommend dismissal of Plaintiff's complaint on initial review with leave to amend. *See Gomez,* 171 F.3d at 795. However, because the Court finds that all of Plaintiff's claims are barred by the applicable statutes of limitations, a better pleading will not cure the problem. *See Smith v. New York City Transit Authority*, 1999 WL 1212562 (2d Cir. Dec. 13, 1999) (Table) (a complaint may be dismissed on initial review where it is clear from the face of the complaint it is barred by the applicable statute of limitations); *Hussain v. Yaqub*, No. 15-CV-2261 (DLI), 2018 WL 4697275, at *2 (E.D.N.Y. Sept. 9, 2018) (dismissing plaintiff's complaint with prejudice on initial review because it was clear on the face of the complaint the action was time barred).

     Plaintiff's state law claim that Defendants failed to provide her with police protection is a negligence claim. *See Diefenbacher*, 2007 WL at 128876, at *4. The statute of limitations in New York for a negligence claim is three years. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 744 (2d Cir. 1979). A personal injury claim predicated on negligence accrues when the injury is sustained. *See Barrell v. Glen Oaks Village Owners, Inc.*, 814 N.Y.S.2d 276 (2d Dep't 2006). Therefore, even if Plaintiff were able to replead to allege facts plausibly showing a special relationship with one or more of the Defendants, her failure to provide police protection claim would be barred by the three year statute of limitations.

     Claims arising under 42 U.S.C. § 1983 are governed by the relevant state statute of limitations, and in New York, such claims are governed by the general three-year limitations

period governing personal injury claims.  *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  Accrual of the claim, however, is a question of federal law.  *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).  Under federal law, generally a claim under § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002).  In this case, Plaintiff had reason to know of any excessive force claim she might have had when it occurred on March 29, 2013, and with regard to a false arrest claim, by the time she plead guilty on November 26, 2013.  (Dkt. No. 1 at 12.)  Therefore, the Court finds that any § 1983 claims Plaintiff might have arising out of the March 29, 2013, incident are also barred the statute of limitations.

      **F.**    **Conclusion**

     Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed with prejudice on initial review.

     **ACCORDINGLY**, it is hereby

     **ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;

     **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** on initial review under 28 U.S.C. § 1915(e); and it is further

     **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:  November 1, 2018
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2007 WL 128876
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael DIEFENBACHER, Plaintiff,

v.

Sgt. Gary DAVENPORT, Officer William Clark,
and Officer Michael Blasczienski, Defendants. [1]

No. 5:04-CV-1071 (GLS/GJD).
|
Jan. 12, 2007.

**Attorneys and Law Firms**

Michael Diefenbacher, Georgetown, NY, Plaintiff, pro se.

Smith, Sovik Law Firm, Gabrielle M. Hope, Esq., of
counsel, Syracuse, NY, for Defendants.

*MEMORANDUM-DECISION AND ORDER*

GARY L. SHARPE, U.S. District Judge.

### I. *Introduction*

**\*1** *Pro se* plaintiff, Michael Diefenbacher, alleges,
pursuant to 42 U.S.C. § 1983, that defendants violated
his Fourteenth Amendment rights. Pending under Federal
Rule of Civil Procedure 56 is defendants' motion for
summary judgment. *See Dkt. No. 35.* For the reasons that
follow, defendants' motion is granted.

### II. *Facts* [2]

Viewing the facts in the light most favorable to
Diefenbacher, the material facts are as follows. On July
18, 2002, Diefenbacher telephoned the Fulton Police
Department from his home in Hannibal, New York.
*See Def. SMF ¶ 3, Dkt. No. 35.* Officer Davenport
was on duty that day, and he answered Diefenbacher's
call. *See id .* ¶ 4. Diefenbacher reported to Davenport
that a man named Adolfo Marquina-Tapia threatened
him over the telephone. *See id.* ¶ 5. Diefenbacher told
Davenport that he wished to have Marquina-Tapia

arrested for aggravated harassment. *See id.* Davenport
explained to Diefenbacher that he needed to pursue this
complaint with the Oswego County Sheriff's Department
because Hannibal, Diefenbacher's residence, was outside
the jurisdiction of the Fulton Police Department. *See
Def. SMF* ¶ 6, *Dkt. No. 35.* Instead, Diefenbacher asked
Davenport if officers could accompany him to the Clark/
Marquina-Tapia residence so that he could check on his
son, Timothy Clark, who resided there with Marquina-
Tapia and his mother, Judy Clark. *See id.* ¶ 7. Davenport
advised Diefenbacher that all officers were currently
involved in other assignments and could not accompany
him to the Clark/Marquina-Tapia residence at that time.
*See id.* ¶ 8. Davenport strongly advised Diefenbacher not
to go by himself or confront Marquina-Tapia. *See id.* ¶ 10.
Nevertheless, Diefenbacher went to the Clark/Marquina-
Tapia residence alone. *See Def. SMF* ¶ 12, *Dkt. No. 35.*

Shortly thereafter, the Fulton Police Department received
a report of a disturbance at the Clark/Marquina-Tapia
residence. *See id.* ¶ 13. In response to the complaint,
Officers Clark and Blasczienski arrived at the Clark/
Marquina-Tapia residence and interviewed Diefenbacher
and his son, Timothy. *See id.* ¶ 14. Diefenbacher told the
officers that he was concerned about Timothy's welfare
because Marquina-Tapia owned a machete. *See id.* To the
contrary, Timothy told the officers that Marquina-Tapia
never threatened anyone nor used his machete toward
anyone. *See Def. SMF* ¶ 16, *Dkt. No. 35.* Timothy also
told them that it was actually Diefenbacher who was
threatening Marquina-Tapia. *See id.* ¶ 16. Judy Clark,
Timothy's mother, also confirmed that Timothy was not
endangered in any way by Marquina-Tapia. *See id.* ¶ 20.

Later, Officer Blasczienski located Marquina-Tapia at the
Holly Drive Motel and interviewed him about a machete.
*See id.* ¶ 17. Marquina-Tapia was cooperative, showed
him the machete, and explained that it was a tool he used
while working at a farm. *See id.* ¶ 18. After interviewing
Marquina-Tapia, the officers were satisfied that he had
not used, threatened to use, or intended to use the machete
against Diefenbacher or Timothy. *See Def. SMF* ¶ 19, *Dkt.
No. 35.* The officers did not confiscate Marquina-Tapia's
machete because they concluded that he did not commit
a crime. *See id.* ¶ 21. After June 18, Diefenbacher did not
place any emergency calls for assistance to defendants. *See
id.* ¶ 22.

**\*2** On the evening of July 12, Diefenbacher, Judy Clark, and others went out drinking at various establishments in the Fulton area. *See id.* ¶ 23. At the end of the night, Diefenbacher believed that Judy Clark intended to spend the night with him at the Holly Drive Motel. *See Def. SMF* ¶ 24, *Dkt. No.* 35. However, Clark returned to her home without Diefenbacher in the early morning of July 13. *See id.* Meanwhile, Diefenbacher called the Clark/Marguina-Tapia residence at 1:41, 1:44, and 1:46 a.m. from the Holly Drive Motel. *See id.* ¶ 25. During the third phone call, Diefenbacher told Marguina-Tapia that he was coming to "kick his ass." *Id.* At approximately 1:58 a.m. on the morning of July 13, Diefenbacher appeared at the Clark/Marguina-Tapia residence and banged on the door. *See id.* ¶ 28. He yelled to Marguina-Tapia to "come outside or I'll kill you...." *See id .* Diefenbacher then broke down the rear door of the Clark/Marguina-Tapia residence, and the door struck Marguina-Tapia in the forehead. *See id.* ¶ 29. Marguina-Tapia struck Diefenbacher with a machete twice. *See Def. SMF* ¶ 30, *Dkt. No.* 35.

Both Diefenbacher and Marguina-Tapia were arrested by the Fulton Police Department as a result of this incident, but the charges against Marguina-Tapia were eventually dropped. *See id.* ¶ 31. After being charged with burglary, assault, and criminal mischief, Diefenbacher was convicted and incarcerated. *See id.* ¶ 33. He currently resides at Cayuga County Correctional Facility. *See id.*

### III. *Procedural History*

On September 14, 2004, Diefenbacher filed his original complaint pursuant to 42 U.S.C. § 1983. *See Dkt. No. 1.* On January 18, 2005, Diefenbacher filed an amended complaint against defendants, Davenport, Clark, and Blasczienski. *See Dkt. No. 7.* Defendants answered on August 1 and moved for summary judgment on July 26, 2006. *See Dkt. Nos. 20, 35.* Despite the passage of the due date, Diefenbacher failed to file a response to defendants' motion. On September 6, the court ordered Diefenbacher to either notify the court and opposing counsel of his intention not to respond to defendants' motion or to file his elective response within fourteen days. *See Dkt. No. 36.* The deadline has now expired. To date, Diefenbacher has failed to either respond to defendants' motion or to notify the court of his intention not to respond pursuant to the court's September 6th order. [3] *See id.*

### IV. *Discussion*

#### A. *Motion for Summary Judgment Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986) (citing FED.R.CIV.P. 56(c)); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165,170 (2d Cir.2006) (citation omitted). All reasonable inferences must be drawn in favor of the nonmoving party. *See Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.. Catrett,* 477 U.S. 317, 323 (1986) (citation omitted); *see also SEC. v. Kern,* 425 F.3d 143, 147 (2d Cir.2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (citation omitted). However, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998).

#### B. *Defendants' Motion*

**\*3** Defendants argue that Diefenbacher's complaint fails to state a claim upon which relief can be granted. In particular, defendants argue: (1) that the allegations in the complaint fail to state violations of 42 U.S.C. §§ 1983, 1985, or the Fourteenth Amendment; (2) that, in the absence of a special relationship between the parties, the defendants cannot be liable to Diefenbacher for any alleged failure to provide adequate police services; and (3) that, alternatively, defendants are entitled to qualified immunity.

As an initial matter, the court has liberally construed Diefenbacher's complaint to allege two causes of action, an Equal Protection claim and a negligence claim. As defendants properly noted, Diefenbacher has alleged

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    2

claims against them in both their official and individual capacities. For the reasons that follow, Diefenbacher's claims are dismissed.

### 1. The Merits

#### a. Equal Protection Claim
Defendants argue that Diefenbacher's Equal Protection claim fails as a matter of law for two reasons. First, defendants argue that they cannot be held liable in their official capacities because Diefenbacher failed to allege an unconstitutional policy or custom that violates the Equal Protection Clause. Second, defendants argue that they cannot be held liable in their individual capacities because Diefenbacher failed to state a claim for which relief can be granted. In particular, defendants maintain that Diefenbacher failed to allege that he was treated differently from those similarly situated and that such impermissible treatment was based on a discriminatory motive.

The Equal Protection Clause directs state actors to treat similarly situated people alike. *See City of Cleburn v. Cleburn Living Ctr.,* 473 U.S. 432, 439 (1985). To prove an Equal Protection violation, claimants must prove "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (internal citation omitted).

Defendants are correct that official-capacity claims under § 1983 must be based on an unconstitutional policy, custom, or regulation. *See Monell v. Dep't of Soc. Services,* 436 U.S. 658, 694-95 (1978). In fact, a municipality or person sued in their official capacity can be found liable under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690.

Here, Diefenbacher has failed to set forth allegations demonstrating that he was deprived of his constitutional rights because of an impermissible municipal custom or policy. Accordingly, Diefenbacher's Equal Protection claim against the defendants in their official capacities is dismissed.

Next, defendants argue that Diefenbacher failed to allege, even in conclusory fashion, the basic elements of an Equal

Protection claim. In order to establish an Equal Protection claim, a plaintiff "must allege that a government actor intentionally discriminated against [him] on the basis of race, national origin, or gender." *Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir.1999). "Such intentional discrimination can be demonstrated in several ways." *Id.* First, a plaintiff can point to a law or policy that is facially discriminatory, meaning that "it expressly classifies persons on the basis of race or gender[ ]" or national origin. *Id.* Second, a plaintiff can point to a government action that is facially neutral but applied in a discriminatory fashion. *See id.* Finally, a facially neutral policy or government action "violates equal protection if it was motivated by discriminatory animus and its application results in discriminatory effect." *Hayden,* 180 F.3d at 48.

**\*4** Here, Diefenbacher has not pointed to any discriminatory law, policy, or practice. He has not alleged that he suffered any discrimination on account of his race, national origin, or gender in connection with the events giving rise to this suit. Diefenbacher's sole allegation is that defendants failed to pursue his complaints because they "did not like him due to many previous encounters ... and [they] brushed the incidents off." *Dkt. No. 7, p. 5.* Moreover, he has failed to allege facts demonstrating that he was treated differently than those similarly situated. These facts alone fail to satisfy even the minimal elements of an Equal Protection claim.

As stated, Diefenbacher has failed to allege facts demonstrating that he was treated differently than those similarly situated because of defendants' purposeful discrimination. Even when liberally construed, Diefenbacher's amended complaint fails to set forth a viable Equal Protection claim against the defendants. Accordingly, defendants' summary judgment motion is granted, and Diefenbacher's Equal Protection claim is dismissed. [4]

#### b. Negligence Claim
Defendants maintain that they cannot be liable under a negligence theory because they had no special relationship with Diefenbacher. Generally, New York law requires that a plaintiff in a negligence action establish: "(1) that the defendant owed him ... a cognizable duty of care; (2) that the defendant breached that duty; and (3) that [he] suffered damage as a proximate result of that breach."

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   3

*Di Benedetto v. Pan Am World Serv. Inc.,* 359 F.3d 627, 630 (2d Cir.2004) (citing *Solomon v. City of New York,* 66 N .Y.2d 1026, 1027 (1985)).

In proving the duty element, "[t]he plaintiff must establish not only that a defendant owed a general duty of care to society as a whole, but also that the defendant owed a specific duty running to the particular plaintiff." *Fagan v. AmerisourceBergen Corp.,* 356 F.Supp.2d 198, 206 (E.D.N.Y.2004). In New York, courts balance the following five factors in order to determine the existence of a duty: "(1) the reasonable expectations of the parties and society generally; (2) the proliferation of claims; (3) the likelihood of unlimited or insurer-like liability; (4) disproportionate risk and reparation allocation; and (5) public policies affecting the expansion or limitation of new channels of liability." *Id.* (internal quotation marks and citation omitted).

Moreover, a municipality or its employees "may not be held liable for injury to a claimant resulting from a simple failure to provide police protection even against future harm." *Tyler v. Deutsch,* 93-CV-4609, 1995 WL 313137, at *1 (E.D.N.Y. May 16, 1995). However, a narrow exception exists when there is special relationship between the parties. *See Cuffy v. City of New York,* 69 N.Y.2d 255, 260 (1987). A special relationship arises when there are: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking [.]" *Cuffy,* 69 N.Y.2d at 260. Finally, it is well-settled that an individual has no constitutional right to a police investigation, police action, or an arrest or prosecution of another person absent "class-based" discrimination. *See Tyler,* 1995 WL 313137, at *2.

**\*5** Here, Diefenbacher has not alleged the existence of a special relationship. He has not alleged that defendants promised him they would protect him from Marquina-Tapia. Defendants had no contact with Diefenbacher after June 18, 2002. Defendants could not have known on June 18, 2002 that Diefenbacher would go to the Clark/Marquina-Tapia household a month later, barge through the front door, and initiate a confrontation

with Marquina-Tapia, causing Marquina-Tapia to defend himself with a machete.

Based on these facts, defendants had no special relationship with Diefenbacher as a matter of law. Accordingly, defendants' motion is granted, and, to the extent that Diefenbacher's second cause of action sounds in negligence, it is dismissed.

### 2. Qualified Immunity

In the alternative, defendants maintain that they are entitled to qualified immunity. Government agents enjoy qualified immunity when they perform discretionary functions if either "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively unreasonable to believe that [their] acts did not violate these clearly established rights." *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998) (internal quotations marks and citation omitted); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818-19 (1982).

To determine whether a right was clearly established, the court must ask whether: (1) the law was defined with reasonable clarity, (2) the Supreme Court or Second Circuit has affirmed the rule, or (3) a reasonable defendant would have understood from the existing law that the conduct was unlawful. *See Anderson v. Recore,* 317 F .3d 194, 197 (2d Cir.2003). Even in the absence of binding precedent, a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right[,] ... and the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

Moreover, within the context of summary judgment, the issue instead is whether a reasonable jury, looking at the evidence in the light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not clearly violate an established *federally* protected right. *See Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987).

The court has already determined that defendants' conduct did not violate any clearly established constitutional rights. Since Diefenbacher has not cited any case law to the contrary, and it is well-settled that an individual is not constitutionally entitled to police action,

the defendants are entitled to qualified immunity. Even if Diefenbacher had alleged facts sufficient to state a viable claim, the defendants are entitled to qualified immunity. Accordingly, defendants' motion is granted.

**WHEREFORE,** for the foregoing reasons, it is hereby

 **\*6  ORDERED** that defendants' motion for summary judgment (*Dkt. No. 35* ) is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY;** and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 128876

---

Footnotes

1    Defendants are sued both individually and in their official capacities. See Dkt. No. 7.

2    Diefenbacher's complaint is nearly incomprehensible. In the interest of justice, and considering that Diefenbacher is *pro se,* the court liberally construes Diefenbacher's amended complaint to allege an Equal Protection claim in violation of the Fourteenth Amendment and a claim for negligence.

3    Local Rule 7.1 states in pertinent part:
    Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.
    Any party who does not intend to oppose a motion, or a movant who does not intend to pursue a motion, shall promptly notify the court and the other parties of such intention. Notice should be provided at the earliest practicable date, but in any event no less than SEVEN CALENDAR DAYS prior to the scheduled return date of the motion, unless for good cause shown. Failure to comply with this Rule may result in the Court imposing sanctions.
    N.D.N.Y. R. 7.1(b)(3). "Courts in [the Northern] District [of New York] have found it appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based on a *pro se* plaintiff's failure to respond." *McCarthur v. Carrier Corp.,* 5:01-CV-0011, 2005 U.S. Dist. LEXIS 39711, at *8 (N.D.N.Y. Sept. 30, 2005); *see also Robinson v. Delgado,* 96-CV-169, 1998 U.S. Dist. LEXIS 7903, at *2 (N.D.N.Y. May 22, 1998); *Cotto v. Senkowski,* 95-CV-1733, 1997 U.S. Dist. LEXIS 16462, at *1 (N.D.N.Y. Oct. 23, 1997); *Wilmer v. Torian,* 980 F.Supp. 106, 106-107 (N.D.N.Y.1997).

4    As defendants correctly point out, Diefenbacher cannot state a claim under 42 U.S.C. § 1985 because he has not alleged the existence of a conspiracy. *See* 42 U.S.C. § 1985. Accordingly, to the extent that Diefenbacher's complaint stated any potential claim under 42 U.S.C. § 1985, it is dismissed as a matter of law.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

Attorneys and Law Firms

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### MEMORANDUM DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.)[1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

## I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.)[2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See
generally* Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this
action *in forma pauperis.* (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,* "(2) ... the court shall
dismiss the case at any time if the court determines that
—... (B) the action ... (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

**A. Governing Legal Standard**

 **\*2**  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–

61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

 **\*3**  As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that

Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

*5 To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily

2012 WL 651919

committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible

connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court— to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that*

*may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future

wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

 **\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

> the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED** without prejudice and with leave to be reinstated as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

Footnotes

1    This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).

The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2    At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3    The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

4    *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5    *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

9    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

10   The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not

2012 WL 651919

an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

11    *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12    *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13    *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

14    For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4697275
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

MUMATZ HUSSAIN, pro se, Plaintiff,

v.

YAQUB, et al., Defendants.

15-CV-2261 (DLI)
|
Filed 09/30/2018

## SUMMARY ORDER

DORA L. IRIZARRY, Chief United States District
Judge

**\*1** Plaintiff Mumtaz Hussain, proceeding *pro se*, filed
this action on April 16, 2015, against Yaqub, Shafqat
Hussain Arshad, Abdul Malik Chowk Panjkat, Man
Zoor, Nazir, Bashir, Yusof, Imran, Mushtaq, Zulfiqar,
JoJ, Vaziq and Taj ("Defendants") for "defrauding"
him. Complaint ("Compl."), Dkt. Entry No. 1. For the
reasons set forth below, Plaintiff's request to proceed *in
forma pauperis* is granted only for purposes of this Order
dismissing this action.

## BACKGROUND

Plaintiff, currently a resident of Bronx, New York, [1]
brings this action against Shafqat Hussain Arshad
("Arshad") and various other defendants, all of whom
he alleges reside in Pakistan. Plaintiff alleges that he
entrusted Arshad to operate two pharmacies and a travel
agency he owned in Brooklyn while he returned to
Pakistan to care for his mother. Compl. at 3. Plaintiff
contends he tasked Arshad "to expand the businesses
and operate Universal travel and tours" during this leave
of absence. *Id.* However, "[i]n 1994 [Arshad] took the
money out of travel agency.... sold inventory and moved
to Pakistan," when Plaintiff questioned Arshad about
his actions, Arshad allegedly "told [Plaintiff] he would give
[him] money for [his] expenses in Pakistan." *Id.* Plaintiff
alleges that, in 1999, he came back to the United States.
*Id.* "[W]hile in [the] USA [he] called [Arshad] but he would
not answer [Plaintiff's] calls." *Id.* Plaintiff alleges that he

then returned to Pakistan, whereupon Arshad "threatened
to kill [him]." *Id.* As a result, Plaintiff "had to leave
that country." *Id.* Plaintiff seeks $712,493.00 in money
damages. *Id.* at 1.

## STANDARD OF REVIEW

The Court is mindful that *pro se* complaints are held to less
stringent standards than pleadings drafted by attorneys
and the Court is required to read the plaintiff's *pro se*
complaint liberally and interpret it as raising the strongest
arguments it suggests. *Erickson v. Pardus,* 551 U.S. 89
(2007); *Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *Sealed
Plaintiff v. Sealed Defendant #1,* 537 F.3d 185, 191-93 (2d
Cir. 2008).

Moreover, at the pleadings stage of the proceeding,
the Court must assume the truth of "all well-pleaded,
nonconclusory factual allegations" in the complaint.
*Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123
(2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662,
678-79 (2009)). A complaint must plead sufficient facts to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). However,
under 28 U.S.C. § 1915(e)(2)(B), a district court shall
dismiss an *in forma pauperis* action where it is satisfied
that the action is "(i) frivolous or malicious; (ii) fails to
state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief."

## DISCUSSION

Plaintiff alleges "Arshad defrauded [him] in the amount
of 712[,]493 U.S. dollars [and] Defendants ... helped
him steal, hide, transfer, [and] occupy the properties
purchased with [Plaintiff's] money." Compl. at 1. The
Court construes this action as a claim for conversion.
Conversion is the unauthorized exercise of control over
the property of another. *See generally* 23 N.Y. Jur.2d,
Conversion §§ 22 and 34. To prove conversion under New
York law, a plaintiff must show: "(1) legal ownership or
an immediate superior right of possession to a specific
identifiable thing and (2) that the defendant exercised
an unauthorized dominion over the thing in question, to
the alteration of its condition or to the exclusion of the
plaintiff's rights." *Wells Fargo Bank, N.A. v. National*

2018 WL 4697275

*Gasoline, Inc.*, 2013 WL 696651 (E.D.N.Y. Feb. 26, 2015) (quoting *Eaves v. Designs for Fin., Inc.*, 785 F. Supp.2d 229, 267 (S.D.N.Y. 2011). "Moreover, where a conversion claim is for money, the funds in question must be specific and identifiable." *Wells Fargo Bank, N.A.*, 785 F. Supp.2d at 267 (citing *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995)).

**\*2** As a threshold matter, because Plaintiff's claims lie entirely in state law, this Court may entertain the action only if diversity jurisdiction pursuant to 28 U.S.C. § 1332 exists. A claim properly is brought under the Court's diversity jurisdiction if it is between parties of diverse citizenship and the amount in controversy exceeds the jurisdictional amount of $75,000.00. 28 U.S.C. § 1332(a). Plaintiff, allegedly a resident of New York, seeks redress against Yaqub and the other named defendants, all of whom allegedly live in Pakistan, for damages in the amount of $712,493.00. As such, for purposes of this Order, and liberally construing *pro se* Plaintiff's Complaint, the Court will assume that diversity jurisdiction exists.

However, Plaintiff's claims fail because they were brought well past the statute of limitations period. "New York applies a three-year statute of limitations for conversion." *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp.3d 244 (E.D.N.Y. 2014) (quoting *St. John's Univ. v. Bolton*, 757 F. Supp.2d 144, 179 (E.D.N.Y. 2010) (citing N.Y. C.P.L.R. § 214(3)). "A cause of action for conversion accrues when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." *Id.* (quoting *State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 258 (2002) (quotation and citation in original omitted). Arshad's liquidation of

Plaintiff's businesses and subsequent move to Pakistan allegedly occurred from 1994 to 1999. Plaintiff filed this action in 2015, well past the limitations period. Moreover, Plaintiff was aware of Arshad's actions in 1994 and possessed the facts necessary to bring a conversion action at that time. Accordingly, his claims are time barred.

While ordinarily the Court would allow Plaintiff an opportunity to amend the Complaint, *see Cruz v. Gomez*, 202 F.3d 593, 597-98 (2d Cir. 2000), it need not do so here because it is clear from the face of the Complaint that he cannot establish a basis for a claim that is not time barred. Consequently, any attempt to amend the Complaint would be futile. *See Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (leave to amend futile where barriers to relief cannot be surmounted by reframing complaint); *Cuoco v. Moritsugu, et. al*, 222 F.3d 99, at 112 (2d Cir. 2000).

**CONCLUSION**

For the forgoing reasons, the Complaint is dismissed, with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 269 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 4697275

---

Footnotes

1    On July 6, 2015, Plaintiff notified the Court of a change in his address from Brooklyn to a location in the Bronx. *See* Dkt. Entry Nos. 4 and 5.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

201 F.3d 432
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. See Federal Rule of Appellate
Procedure 32.1 and this court's local Rule 32.1.1. for
rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Second Circuit.

Henry SMITH, Plaintiff-Appellant,
v.
NEW YORK CITY TRANSIT AUTHORITY
(N.Y.CTA), Defendant-Appellee.

No. 99-7392.
|
Dec. 13, 1999.

Appeal from the United States District Court for the
Southern District of New York, Thomas P. Griesa, Chief
Judge, No. 99-7392.

**Attorneys and Law Firms**

Henry Smith, New York, NY, pro se.

Ellen B. Fishman, Assistant Corporation Counsel,
Michael D. Hess, Corporation Counsel, of counsel, New
York, NY, for appellee.

Present McLAUGHLIN, STRAUB, and SACK, Circuit
Judges.

**Opinion**
**\*1** AFTER SUBMISSION AND UPON DUE
CONSIDERATION, IT IS HEREBY ORDERED,
ADJUDGED AND DECREED that the judgment of the
District Court is hereby AFFIRMED.

Plaintiff-Appellant Henry Smith, proceeding *pro se* and *in
forma pauperis,* appeals from a March 25, 1999 judgment
of the United States District Court for the Southern
District of New York (Thomas P. Griesa, *Chief Judge* ),
which *sua sponte* dismissed his complaint asserting a claim
under 42 U.S.C. § 1983 prior to service upon Defendant-
Appellee New York City Transit Authority ("NYCTA").

Twenty-eight U.S.C. § 1915(e)(2)(B)(i) provides that a
district court "shall dismiss [an *in forma pauperis* ] case
at any time if the court determines that ... the action
or appeal ... is frivolous or malicious." A complaint
is frivolous if it lacks an arguable basis in law or
fact, *see Neitzke v. Williams,* 490 U.S. 319, 325, 327
(1989), and a complaint may be dismissed as frivolous
prior to service where it is clear from the face of
the complaint that the claim is time-barred under the
applicable statute of limitations, *see Pino v. Ryan,* 49 F.3d
51, 54 (2d Cir.1995) (affirming dismissal where injuries
complained of occurred "well outside the applicable three-
year limitations period, there [were] no applicable tolling
provisions as a matter of law, and plaintiff [had] alleged
no facts indicating a continuous or ongoing violation
of his constitutional rights" (internal citation omitted)).
Litigants bringing § 1983 claims arising in New York
must commence their actions within three years of the
alleged violation. *See Owens v. Okure,* 488 U.S. 235, 251
(1989). Smith's claim is based on an incident that was
alleged to have occurred more than four years prior to the
filing of his complaint. As there are no applicable tolling
provisions and no facts have been alleged indicating a
continuous or ongoing violation of Smith's constitutional
rights, the District Court was correct to dismiss Smith's
action as time-barred.

We therefore affirm.

**All Citations**

201 F.3d 432, 1999 WL 1212562 (Table)

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.